We are pleased to report that I, Major Jay Cutchins, here report the appellant in conviction of Ronald Smith. The threshold issue before the court is must the court abstain under Younger v. Harris. To answer that, the court must first determine exactly what he is being asked to abstain from this item. In other words, it has to determine the substance of the constitutional claim. Unfortunately, the claim under Harris is extremely straightforward. The exception to Younger abstention is really narrow. The Supreme Court has said so pretty clearly. And I frankly don't understand why your evidence is good enough to be within the exception. It's perfectly plausible that the State told him nothing further will happen to you, meaning in this case. You won't be hit with three strikes in this case. We won't charge you for I think there was a third act in this case. And it's not very plausible that they told him there will never be any further proceedings against you ever for anything, which is basically what you're claiming. With all due respect, it is not what we're claiming. It has never been what we're claiming. What we're claiming is that the State, and I think it's undisputed, the State said nothing additional will be filed against you. What that means, I think, is absolutely clear. Unless he does something additional wrong, that nothing additional will be filed against him. In one of the many – in the version that the State likes best, which is the – There was a third child, right? I believe so. They didn't bring charges against him for the third child. That's true. What they say is unqualified, unrestrictedly, nothing additional will be filed against you. The version that the State likes is the one that was drafted by the public defender. that nothing additional would be filed against you based on the incidents underlying and supporting prosecution for dockets 12-603 and 12 – 125,504. Everything, everything that underlies the civil commitment procedure that the State brought was alleged in those dockets. The State is proceeding on nothing but what it previously asserted against him in the proceeding, which it said nothing additional would be filed. Why can't the State decide the Santo Bello claim in the civil commitment proceedings? The problem there is that if his claim is meritorious, then the civil commitment proceeding is itself a constitutional matter. Yes, but why can't the State court so hold and dismiss the proceeding? I suppose they could, but that is the question. The State proceeding itself is the injury. It doesn't make sense to abstain in favor of a State proceeding that is in itself the injury. But there's an even stronger reason why younger abstention doesn't apply. No, it does make sense. The reason it makes sense is the, quote, our federalism, close quote, principle that Younger v. Harris says it relies on. The State can decide. The State can decide. The State can raise defenses to the State prosecution. But if his claim is valid and nothing additional was to be filed, if that was his right. So maybe he can proceed in the State court, and if the State superior court says I'm not going to entertain this, he can do an interlocutory proceeding before the California court of appeal. Well, all of that already happened, Your Honor. He did assert it. They did refuse to hear it. He did bring interlocutory proceedings in the State court of appeal and in the State supreme court denied without explanation. He has an opinion. Well, and he testified. He testified in the superior court that he was worried about three strikes. No, he didn't. On page 112, 113 of excerpts, what was your concern? He responds, at that time I was facing a three-strike situation. District attorney agreed to drop all that, da, da, da, da. That sounds as though that's what he was worried about. It may be what he was worried about.  He was reassured. He was reassured. He was reassured by that statement. Listen, we're not going to file anything further. Well, the point is he, he, it's undisputed that he had no idea that there was anything else possible. So that, so what was understood is that Mr. Hutchinson in our office wasn't going to file anything under the three-strikes law, correct? No, the information was already in the three-strikes case. Right, but you weren't sentenced under three strikes. They simply doubled that. But it sounds to me as though all of this goes to the question of he's worried about three strikes. He's not, he's not on the table one way or the other as to whether there's going to be a sexually violent predator act proceeding. Because he had no idea there was anything else. I don't think it did at the time, did it? Yes, it did. It did? It existed for some years. You know, under, under Buckley and Brown versus Poole, it's clear that the, that the agreement is to be interpreted as a reasonable person, and the defendant's situation would understand it. And I submit that any reasonable layperson would understand it. Nothing further will be filed to mean that if I don't do something else wrong, I'm not going to be prosecuted. But the underlying claim here, if we get to it, is that he entered into the plea bargain based on a misunderstanding. Is that right? No. The underlying claim is that he entered into the plea bargain based on an explicit understanding that he would not be prosecuted for any prior misconduct in any way, shape, or form if he did his 12 years, and if he paid his fine, both of which he did. I got it. Okay. Maybe you can help me understand, why has he been sitting in the county jail for six and a half years without having had the trial on the SBPA claim? I think because the – well, actually, anything I was going to say about that would be speculative. I don't know. Maybe the State can help us on that question. Perhaps. My guess is that in substantial measure, they're waiting for the Federal courts to act. But the Federal courts have routinely refused to act, and that usually doesn't hold them up when there's no injunction from the Federal court. Well, the Federal – you know, the petition was originally dismissed by Judge Chesney. Right. It came up here. Right. Judge Chesney was reversed. Right. So there's a live Federal case. I don't want to speak to it. Okay. Well, the State may know. The State may not know. Okay. It is an excellent point, Your Honor, that he has been sitting in jail for seven years since he completed his sentence. He's now 74 years old. As he said recently to me, this case isn't getting any younger, and neither am I. So I'm hoping that in one way or another it's resolved soon. The – I submit that it's absurd to think that the appellant or any other reasonable lay person, and that's the test, would have accepted a deal based on a promise that he would not face further criminal prosecution if he had any inkling that the prosecutor would still be free to use a non-criminal prosecution to achieve the same result. As this Court said in Brown v. Poole, where it's clear from the context what would reasonably have prompted acceptance of the agreement, no further speculative inquiry is needed. That's what prompted it. What he wanted is really straightforward. He wanted not to be prosecuted on the basis of what had happened before. He said, okay, I'm going to do my 12 years, which, given that this was a wobbler, could have been charged with misdemeanor. Long sentence. He said, I'm going to do that. I just want the understanding you're not going to come after me unless I do something else. And the State said, fine. And then the week before he was to be released, they instituted civil commitment proceedings that probably will result in him being locked up for the rest of his life based on the things that he had done before that were alleged in the criminal complaint to which he pled. So I see I'm running out of time. I meant to reserve two minutes. Do you have another, some authority where a circuit court has enjoined a State civil commitment proceeding in the nature of sexually violent predator? I don't have that, but I do think that the case that is in principle, at least directly on point, is Roe v. Griffin. The 11th Circuit case. The 11th Circuit case. And that gets to a point. That was a pretty different claim, as I recall. It was, it was, I would submit that the underlying claim was, excuse me, precisely the same. What the 11th Circuit held in there, I mean, it was a weaker claim because what the defendant had done was cooperate with the government. There wasn't a formal plea agreement. So the 11th Circuit analogized to Santabella. He was assured transactional immunity. This was the guy who testified against the Ku Klux Klan for killing Viola Liuzzo. And he was given transactional immunity for his part in the murder, and then they prosecuted him for it anyway, right? Right. And I submit that where there's, where Santabella was directly on point, where there is a plea agreement, it's a much stronger case. This is a much stronger case than that. But under those circumstances, the 11th Circuit held, once a defendant's good faith compliance with the terms of the agreement is established, the State must perform on its side, and any attempt by the State to breach the agreement is per se a bad faith prosecution. Judge Fletcher, you asked for, you know, you were struggling in the last case we heard for authority. This is the only authority out there. This is the only case. It is dead on point. Okay. Let's hear from the State, and we'll give you a minute to respond. We took you over, but, yeah. I appreciate that. Peggy Ruffray from the Attorney General's Office for Respondent. Your Honor, it's our position that everybody in the courtroom that day when the defendant but understood what the terms of the plea were. And we know that because their testimony is essentially in agreement. Now, to determine the terms of a plea under California law, you have to look at the circumstances of the plea. Yeah. Do you want to start with Younger? I'm happy to start with Younger. I've got a problem under Younger, and it goes as follows. The basic idea in Younger, of course, is that litigate this in the State courts If there's an ongoing proceeding, it starts out, of course, pretty narrowly with a criminal proceeding, but then we expand out into sort of concentric circles beyond criminal. And a civil commitment proceeding seems to me clearly comes within the scope of what Younger now means. If there's an ongoing civil commitment proceeding that kind of looks a little bit criminal, we have to leave it alone. And the reason we have to leave it alone is that the State court has priority. He can present his claims in the State court proceeding. And then once that's finished, if there's a problem, he can come into federal court, either on direct appeal to the United States Supreme Court. That's usually not going to happen. But then on habeas, then that might happen. But the whole premise for that is that something's going to happen in the State court. And we're just hearing. I had six and a half years. Apparently he's been sitting in the county jail waiting for the State court proceeding to be finished for seven years. Oh, my God. This is not the way it's supposed to work. What's happening? Well, it's my understanding, this is outside the record, but it is my understanding that the State court has essentially agreed to defer until the federal court proceeding is resolved. So they're waiting to see if we're going to enjoin defeating the entire purpose of Younger. Yes. How could that be? I mean, if you argue here Younger requires the federal court to abstain, is the States of California simultaneously telling the State court you should wait until the federal court decides? No, it's the defendant who was asking the State court to delay. The defendant asked the State court to delay until the federal court decided? My understanding from talking to the district attorney. We can't figure it out, though. It would make it real easy if we could figure that out from the record. But I gather we can't. Well, I'm referring to the most recent proceedings that have been happening in State court. And he's represented in the SBPA proceeding by someone other than Mr. Cushins? Correct. Correct. And so it's my understanding that he prefers county jail to the mental hospital where he might eventually end up and is requesting. The mental hospital must be pretty terrible. County jail is no picnic. He has some reasons which I am not, I can't possibly speculate the reason for that. But that's my understanding. But you're understanding that the delay in the State court is at his request? Correct. And I understand this is outside the record and so on and also out of order. Do you have any evidence on this or any knowledge on this, Mr. Cushins? Your Honor, I do not. Okay. So we just don't. It's represented by the Alameda Public Defender. Okay. So the short answer is we don't know. It's not on the record and you're both guessing. Okay. I got it. But on the number aspect, I do think it's clearly meant to be an extraordinary circumstance. Should the district court have an evidentiary hearing to decide whether young or abstention is appropriate, an evidentiary hearing to decide whether there's a bad faith violation or a Santabella violation that would be an extraordinary circumstance? Well, I don't think there's ever been a request for an evidentiary hearing in the district court. And there was an evidentiary hearing in the State court. So, I mean, I think to the extent there is any question about what happened at the plea, that has been done in State courts. So we have all of that evidence that we need. Now, as far as a bad faith prosecution, the only cases that talk about bad faith, that's where they say the prosecution has been commenced without a reasonable expectation of obtaining a conviction. That clearly is not the case here. The Department of Mental Health, in accordance with their normal practice, examined the defendant as his time was coming up. Two psychiatrists agreed that he fit the qualifications for sexually violent predator and then referred the case to the district attorney. But, of course, that's not the only question. It's a probable cause of conviction. In order to get a conviction, you've also got to get past Santabella. But I'm saying as far as whether there was bad faith. No, I'm not sure I'm going to hold against you on the question of bad faith. But the question of bad faith is, does the State have a reasonable expectation of succeeding in the prosecution in the case in front of it? One of them is his mental state. But the other one is, are they barred from bringing the procedure, the proceeding? And that's the Santabella question. So if they have no realistic expectation of getting past Santabella, it's bad faith. Well, there is an absolute expectation of getting past Santabella. And that's that. As the district court found in this case, the prosecutor's statement is subject to only one reasonable interpretation. And so to get back to where I started, I believe that everyone in that courtroom knew exactly what the terms of the plea were at the time he was taken. Now, as I said, you have to consider the circumstances of the plea bargain. Here were the circumstances. He was facing a three-strike sentence. The parties did not discuss the SVP law at all. The defendant testified to that, and the prosecutor also said that. And the SVP law was on the books at this time? It had been enacted about a year and a half before. Okay. The parties did discuss the possibility that in addition to the three-strike sentence, they might be pursuing additional criminal charges in this case involving both the children that he was charged with abducting and a third child as well. And the defense knew that they had been discussing the possibility of filing additional charges. So it was speaking to that point that the district attorney said, I will agree not to file anything further involving this criminal investigation. And, in fact, that's what the defendant said. This is his declaration, which was his direct testimony at the hearing. He signed the declaration that morning. They put him on the stand. His attorney said, this is your declaration. Are you affirming under penalty of perjury that all of these factual allegations are true? And he said yes. And what he said was that the DA specifically promised on the record that nothing additional would be filed against me based on the incidents underlying and supporting prosecution for this case. That's what he said. Where are you reading from? That's in our supplemental excerpts of record at 2. That's his declaration, his own declaration. He said in court, that's my understanding of what the DA said. Well, that's susceptible of two different interpretations. They're not going to do anything else based on what I did. Well, in other words, they're also not going to do an SBPA. Based on the incidents underlying and supporting prosecution for these incidents. Yeah, yeah. I think it's fully susceptible of his interpretation. I may not buy into it, but I think the language is not susceptible of only one interpretation. That is to say, not susceptible only of yours. He said, he testified that he wasn't thinking about the SBP law at the time and neither was the DA. He didn't even know the SBP law existed until 2004. Yeah, but nothing means nothing. Well, nothing doesn't mean I am going to agree to tie the hands. Let me put it, if I were not on the bench, but if I were the attorney on the other side, what I'd probably be thinking of was an argument that, for him, the question was, will I ever see daylight again or do I die in prison? And by avoiding the three sprites, it means someday the door is shut behind me and I'm out when I'm an old man. The SBP means, no, they don't shut behind you. You stay in custody. Well, that is the case any time somebody enters into a plea bargain, but then later on the SBP law comes up. So anybody could say I entered this plea bargain because I was hopeful that I might be able to get out at some point. At that point, they don't know whether they're going to be subject to the SBP law. Well, it's not just hopeful. All you have to do is live long enough. You will get out. Not necessarily, though. They could not have known at the time whether he would qualify or even be subject to SBP statistics. Your argument would be easier for me if the SBPA had not been passed at that time. Now, I understand passed or not passed, he'd never heard of it. Maybe his counsel had, but he hadn't. But we understand that from the law that we've been given, that the fact that somebody might have entered into a plea bargain without any possibility of understanding that there was going to be an SBPA statute passed and that he could be held longer if he satisfies the criteria of the SBPA, that that doesn't invalidate the plea agreement. I got that. But this isn't that case. The statute was on the books at the time the prosecutor makes the promise. And so why shouldn't we include within the promise nothing that I'm now capable of doing to you will I ever do to you beyond this plea and these 12 years? Well, that's not what the prosecutor promised. But aside from the specific language of what he promised, you have to look at the circumstances of the plea. And it has to be a reasonable interpretation. It is not reasonable to believe that the prosecutor was saying, I agree right here and now to tie the hands of the Department of Mental Health and we will never pursue SBP law against you. And the defendant didn't do that. I wish we had the actual transcript. Nobody seems to be fighting about the words, but the words actually might be important. For example, if he said, I won't file anything, that's different from saying nothing will ever be filed. But what prosecutor would ever agree nothing will ever be filed and mean we will never bring any kind of criminal charges against him? That would mean that he would be exacerbated. No, that would be nothing extraordinary. It would be just like a release in a civil case. There will be nothing further for any wrongs from the beginning of time to the present day. Well, one other point that I think is important here is that nothing further was filed about this case where he pled guilty. That was a child abduction case, which does not have a sexual component. So the cases that were the basis for the SBP procedure. You're talking about cases, and I'm thinking conduct. Correct. The question for a defendant is not whether anything further will be filed under this number, though it may be filed under a different number. It's will I be subject to any further custody on account of my past misconduct? Well, I think it's clear that they weren't saying on account of anything you've ever done in the past. He was talking about the incidents underlying and supporting prosecution for this case. That was the child abduction case. And, in fact, the SBP proceeding was not based on child abduction. Child abduction is not one of the crimes that can support the SBP. Those were his other ones from the 60s and 70s and 80s. That's what supported the SBP. This part of the California statute I don't understand. Is it a necessary premise for the operation of the statute that someone be incarcerated and the question be whether he is not going to be released? If someone has already served time and is out on the street for a sexual abuse crime that could trigger SBPA, is the statute applicable to him? They have to be in custody for something, whatever it is. It doesn't have to be a sex crime. It can be for anything. So his pleading to this case and serving time is a prerequisite for the operation of the SBPA? He had to be in custody for something. Right. So if he's not in custody, it's not going to happen. Yes, but I think it's certainly too much weight to bear to construe the words that nothing additional will be filed against me based on the incidents underlying this prosecution to me, and that won't mean that I will be in custody for purposes of the SBP. I got it. Okay. Thank you. Mr. Cutchings, would you like a minute? Yes, maybe a minute and a half. Those come dear. Okay. Start talking. So I have to say Ms. Rufre has repeatedly misspoken. What it says in the declaration, which was the public defender's version, his version was just nothing additional will be filed. But okay, the PD wrote this declaration. What it said is nothing additional will be filed against me based on the incidents underlying and supporting prosecution for dockets, two docket numbers. Not in this case, in those dockets. The criminal complaint in those dockets listed every one of the priors on which the civil commitment is now based. So it's not – Your Honor is absolutely right. Without the conviction for the current crime, there wouldn't have been a civil commitment. But besides that, all of those things were alleged in the dockets to which Rufre included the incidents that were used as the predicate for the sexually violent predator proceeding? Yes, Your Honor, I am. They were alleged as priors for enhancement purposes, and they were specifically alleged, had to be proved, and euthanized. So in order for this to work as a centebello argument, you've got to think, you've got to persuade the judge that he wasn't going to plead to anything that was going to produce any jail time, because as soon as he gets jail time, he's susceptible to the operation of the SDPA. No. No, that's not what's being asserted. What's being asserted is that it's exactly what Judge Kreinfeld said. He wasn't thinking about SDPs or civil commitments or – he had no idea. It's true. But my point is the following. As soon as he pleads to anything that's going to produce jail time, he's then going to be susceptible to the operation of the SDPA, correct? That's true. Right. Unless – And so in order to prevail on a centebello claim, then, I think you're going to have to say, you know, if I'd known what was coming, I wouldn't have pledged anything that was going to produce jail time. And then I've got to look back and say, is it remotely realistic that he was ever going to get a plea that the prosecutor was going to say, why don't you just walk right now, we're done? No, I don't – I can't agree with that construction. I know you can't. I agree with Brown v. Pool. In Brown v. Pool, the prosecutor said, if you do seven – if you have a spotless record for seven years, you'll get out. The prosecutor had no authority to say that. And in fact, in fact, by pleading to an indeterminate sentence, Ms. Brown was completely – was completely susceptible to being locked up indefinitely. But because the prosecutor said that, just as in this case the prosecutor promised nothing additional will be filed, Ms. Brown had a death record. If I may. Is there something in the record where we can find out what dockets 12-6003 and 12-504 said? May I submit that in a letter to the court? We'll ask you for it if we need it. Okay. The – two other things very quick – one other thing very quickly. The cases don't hold – only hold that bad faith exists where there's no reasonable chance of the State succeeding in the prosecution. Cullen v. Flagner, which I cited in the brief, makes very clear that most – the bulk of the cases actually find other forms of bad faith prosecution in a variety of circumstances. Like I said, the only case that has seen this circumstance is Roe v. Griffin and found a bad faith prosecution. Thank you, Your Honor. Thank both of you for arguments – good arguments on both sides. Thank you. Smith v. Plummer, now submitted for decision.
judges: Hug, Kleinfeld, Fletcher